UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JULIO CESAR VALDEZ,

                Plaintiff,                      **MEMORANDUM**
                                                    **DECISION AND ORDER**

                                                    07-CV-4566 (BMC)(LB)

LAFFEY ASSOCIATES, COLDWELL BANKER
LAFFEY ASSOCIATES, BARBARA ARMAS-
CORONADO, NERVIN CORONADO and
EMMETT LAFFEY,

                Defendants.
------------------------------------------------------------X

**COGAN, District Judge.**

This is an action brought by plaintiff *pro se*, against his former employer, a real estate broker, for breach of contract and copyright violation in connection with photographs he took of certain properties while acting as an independent contractor for defendants.[1] The case is before me on defendants' motion for summary judgment. For the reasons that follow, defendants' motion is **GRANTED**.

## BACKGROUND

This dispute arises out of events which took place both during and after plaintiff was a real estate salesman associated with defendant, Coldwell Banker Laffey.[2] Plaintiff became

---

[1] In their final point on summary judgment, defendants claim that Laffey Associates, although appearing on the Independent Contractor Agreement, does not exist, and thus cannot be held liable. Additionally, defendants claim that Emmett Laffey does not manage the Coldwell Banker Laffey office in its day to day operations. On this motion, it is enough that Laffey Associates appears on the Independent Contractor Agreement and that Emmett Laffey presumably stood to gain financially even if he was not involved in the office's day to day affairs. See Shapiro, Bernstein & Co. Inc. v. H.L. Green Co. Inc., 316 F.2d 304, 307 (2d Cir. 1963).

[2] New York Real Property Law ("RPL") § 442-a requires a real estate salesman to be associated with a licensed real estate broker, such as defendant, in order to receive or demand compensation of any kind for any service rendered or work done.

associated with defendants when he signed an independent contractor agreement (the "Independent Contractor Agreement") on January 6, 2006. The Independent Contractor Agreement outlined the obligations and responsibilities of each party during the time that plaintiff remained associated with defendants.

During his tenure as an associated real estate salesman, plaintiff acted as the listing agent for the following properties: 1358 Findlay Avenue, Bronx, New York ("Findlay Avenue Property"), 1385 Teller Avenue, Bronx, New York ("Teller Avenue Property"), and 41-43 43rd Street, Sunnyside, New York ("43rd Street Property"). Plaintiff entered into a listing agreement (collectively the "Listing Agreements") with each of the owners of the properties through the Multiple Listing Service of Long Island ("MLS"), a real estate advertising and marketing service company used by real estate brokers and salespeople to advertise and solicit real estate listings on the internet. The Listing Agreements detail the relationship between plaintiff, acting as broker and agent for the owner, and the owner of the properties. Specifically, paragraph three (3) of the Listing Agreements, states

> The Owner(s) authorizes the BROKER to enter . . . any photographs, images, graphics, and video recordings of the owner's property whether taken by BROKER'S agent, supplied by owner or otherwise (listing content), into a listing content compilation owned by MLSLI. The Owner understands and agrees that said compilation is exclusively owned by MLSLI who alone possesses the right to publish said compilation in any media form it deems appropriate including, the World Wide Web. MLSLI may license, sell, lease and commercially utilize its compilation.

Any photographs, images, graphics, and videos of the property were combined and compiled into what is described as a listing content compilation. These listing content compilations were then uploaded onto MLS so that potential purchasers could see the property. Typically, a salesman associated with a real estate broker will rely on the broker to upload and manage the listing compilations.

Plaintiff took several photographs of the interior and exterior of each of his properties. The photographs were taken in an effort to generally solicit and make the property look desirable for sale. As is customary, plaintiff then voluntarily delivered the pictures to defendants whereupon they were entered into a listing compilation so that they could be uploaded onto MLS and appear on various online websites. Plaintiff's delivery of the photographs to defendants was pursuant to defendants' standard office policy and not accompanied by any writing or oral agreement intended to limit defendants' use of the photographs. Prior to delivering the photographs, plaintiff sought to have them copyright protected by the United States Copyright Office.[3]

Once the content compilations were uploaded, the MLS sent out a feed to numerous online sites including MLSLIRealtor.com, Realtor.com, and Yahoo.com. Additionally, the compilations were uploaded into Coldwell Banker Laffey resources in order to provide further feeds to Laffey.com, NYtimes.com, and Optimumhomes.com, among other websites.

The marketing efforts for the Findlay Avenue property proved successful. The property was placed under contract in September 2006 and closed on March 5, 2007. In accordance with the Independent Contractor Agreement as well as the Listing Agreement, plaintiff received commission for this property.

Coldwell Banker Laffey terminated plaintiff before either of the other two properties in question sold. After his termination, defendants continued to use the MLS listings for each

---

[3] Plaintiff claims to have a certificate of registration for the collection of pictures for each of the three properties. He submitted two certificates in his Second Amended Complaint entitled "There is my city," which was granted March 21, 2007, and "Houses for U," which was granted September 4, 2007. Additionally, plaintiff included in his Second Amended Complaint a registration form with the U.S. Copyright Office for another set of photographs entitled "Houses of U2" and dated January 31, 2007. No certificate of registration was submitted for this third set of photographs, nor is it clear whether the Copyright Office granted a certificate of registration for the third set of photographs. It should be noted that the certificates of registration do not accompany the actual photographs so it is unclear what set of photographs correspond to each certificate. However, as set forth in greater detail below, the photographs were not works for hire and plaintiff has a copyright interest in each of the photographs in dispute.

property, including the photographs taken by plaintiff. Plaintiff brought this action, alleging that defendants' continued use of the photographs in connection with the sale of the properties constituted an unlawful infringement of his copyright interests.

Defendants now move for summary judgment asserting that (1) plaintiff never had a copyright interest in the photographs; (2) any copyrightable interest was forfeited when he voluntarily gave the photographs to defendants; (3) plaintiff gave defendants a nonexclusive right to use the photographs; and (4) having never mentioned copyright infringement before, plaintiff is equitably estopped from asserting such claim. Plaintiff, in response, maintains that as an independent contractor employed by defendants, he enjoyed a federally protected copyright interest in the photographs, which he still retained once he was terminated from their employ.

## DISCUSSION

### I. Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing that he or she is entitled to summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (quotation omitted); see Anderson, 477 U.S. at 248, 106 S. Ct. at 2510 (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party"); Rivkin v. Century 21 Teran Realty LLC, 494 F.3d 99 (2d Cir. 2007). For this reason, "'if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" Binder & Binder PC v. Barnhart, 481 F.3d 141, 148 (2d Cir. 2007) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

The Court affords a *pro se* party some latitude in opposing a motion for summary judgment, see Pabon v. Wright, 459 F.3d 241 (2d Cir. 2006), interpreting his papers "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999). However, even a *pro se* litigant's bald assertions, if unsupported by evidence, are not sufficient to overcome a motion for summary judgment. See Carey v. Crescenzi, 923 F.2d 18 (2d Cir. 1991).

**II. The Rights of the Parties**

Defendants assert on summary judgment that they have not committed copyright infringement, contesting in the first instance that plaintiff had no copyrightable interest at all and maintaining, alternatively, that any protected interest was relinquished when plaintiff, then employed by defendants, voluntarily turned over the photographs for inclusion in the listing compilation.

A. Federal Copyright Law

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'n, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361, 111 S. Ct. 1282, 1296 (1991). The second element is largely undisputed here. It is uncontested that defendants copied plaintiff's work by using the photographs. It is also largely undisputed that the photographs themselves

required some creative spark, and met the exceedingly low threshold for originality. Whether the plaintiff validly owned a copyright interest, however, is a closer question.

1. *Ownership of a valid copyright*

### i. Certificate of Registration from the U.S. Copyright Office

A certificate of registration from the U.S. Copyright Office is prima facie evidence of the facts stated therein. 17 U.S.C. § 410(c). "This has generally been held to mean prima facie proof of ownership and validity [of the copyright]." Novelty Textile Mills, Inc. v. Joan Fabrics Corp., 558 F.2d 1090, 1092 n.1 (2d Cir. 1977) (citing 2 M. Nimmer on Copyright § 141.1 at 611 (1976)). Thus, absent evidence to the contrary, ownership and validity of the copyrights should be presumed.

Here, plaintiff received two certificates of registration from the U.S. Copyright Office. Defendants have not presented any evidence contesting the validity of the copyrights in question. Therefore, plaintiff has proven ownership of a valid copyright for the photographs that accompany the two copyright certificates.

The remaining question, then, is whether the three sets of photographs were works made for hire, in which case defendants rather than plaintiff would retain ownership of the copyright.

### ii. Work made for hire

The general rule of the Copyright Act of 1976 is that a copyright interest vests initially in the author of the work. 17 U.S.C. § 201(a). The exception is work made for hire. The Act provides that when a copyrightable work is made for hire, unless the parties have expressly agreed otherwise in writing, the employer is considered the author of the work and therefore owns the copyright. 17 U.S.C. § 201(b); see also Community for Creative Non-Violence v. Reid, 490 U.S. 730, 109 S. Ct. 2166 (1989).

A work is made for hire if it is: (1) "a work prepared by an employee within the scope of his or her employment" or (2) is work completed by an independent contractor that falls within one of the nine categories specified in the statute,[4] provided the parties expressly agree in writing that the work is made for hire. 17 U.S.C. § 101; see also Reid, 490 U.S. at 743, 109 S. Ct. at 2174. "To determine whether a work is a 'work made for hire' within the § 101 definition, a court should first apply general common law of agency to ascertain whether the work was prepared by an employee or an independent contractor, and, depending upon the outcome, should then apply either § 101(1) or § 101(2)." Reid, 490 U.S. at 731, 109 S. Ct. at 2167-8.

Here, it is clear, given the independent contractor agreement, that plaintiff acted as an independent contractor for the defendants.[5] Accordingly, all of the photographs taken by him while working under the independent contractor agreement, including the ones without a certificate of registration, should be governed by § 101(2).

Because there is no signed written agreement, and the photographs do not fall into any of the nine categories specified in the statute, the photographs are not works for hire. Plaintiff, not defendants, is the author of the photographs and thus retains sole ownership in the validly obtained copyrights.

---

[4] The statute requires work completed by an independent contractor to fall within one of the following categories: as a contribution to a collective work; as a part of a motion picture or other audiovisual work; as a translation; as a supplementary work; as a compilation; as an instructional text; as a test; as answer material for a test; or as an atlas.

[5] Plaintiff would likely qualify as an independent contractor under either the "instance and expense test" as well as the balancing of factors, which includes: the hiring parties right to control the manner and means of creation, the skill required of the person, the provision of employee benefits, the tax treatment of the hired party, and whether the hiring party has the right to assign additional projects to the hired party.

B. <u>New York State Real Property Law, Contract Law, Agency Law and New York Codes, Rules, and Regulations ("NYCRR")</u>

Looking past federal copyright law, defendants point next to state contract, agency and real property law, and argue that any federal copyrightable interest was relinquished when plaintiff became associated with defendants.

More specifically, defendants urge the Court to look to New York Real Property Law § 440(3) ("RPL") which defines a real estate salesman as "a person associated with a licensed real estate broker to list for sale [ ] the purchase or sale or exchange of real estate." Plaintiff was a real estate sales person who associated with defendant, Coldwell Banker Laffey. Moreover, in his capacity as a real estate sales person, plaintiff acted as the listing agent for the three properties. A listing agent under the RPL is defined as "a person who has entered into a listing agreement to act as an agent of the seller or landlord for compensation." RPL § 443(1)(d). Therefore plaintiff, an associated real estate salesman acting as a listing agent, served as an agent of the property owners.

With this legal relationship in mind, defendants point to the contractual language of the MLS Agreements. The Agreements read

> The Owner(s) authorizes the BROKER to enter the … and any photographs, images, graphics, and video recordings of the owner's property whether taken by BROKER's agent, supplied by owner or otherwise (listing content), into a listing compilation owned by MLSLI. The Owner understands and agrees that said compilation is exclusively owned by MLSLI who alone possesses the right to publish said compilation in any media form it deems appropriate including, the World Wide Web. MLSLI may license and resell the same.

This paragraph also contains the following provision which makes reference to property owners assigning and transferring to the broker any and all copyright rights and other intellectual property rights.

> If any photograph, image, graphics or video recordings were created by the owner and are not delivered to BROKER for use in the MLSLI compilation by virtue of

Page 8 of 12

such delivery and the execution of this agreement the owner(s) hereby irrevocably assign and Transfers to BROKER any and all copyright rights and other intellectual property rights in the foregoing.

Defendants rely heavily on this language of the MLS agreement and argue that the MLS, not plaintiff, possesses all copyright rights to the photographs in question.

Defendants are wrong. The MLS agreement clearly states that by entering into the agreement, the *owner* of the property being marketed and sold authorizes the use of any photographs by MLS. The agreement is clear that an *owner* of the property irrevocably and assigns any and all copyright rights. Plaintiff is not the owner of the property. Therefore his rights are not affected by this language of the MLS agreement and defendants' argument is unavailing.

Defendants next contend that under NYCRR § 175.14, titled "[t]ermination of salesman's association with broker," plaintiff no longer maintains ownership of a valid copyright. Defendants assert that the photographs in question are "listing information" and as such, should have been turned over to defendants upon his termination. Whether photographs are "listing information" requires statutory interpretation.

"Statutory interpretation always begins with the plain language of the statute," In re Ames Dept. Stores, Inc., 582 F.3d 422, 427 (2d Cir. 2009) (quoting Universal Church v. Geltzer, 463 F.3d 218, 223 (2d Cir. 2006), which we consider in "the specific context in which that language is used, and the broader context of the statute as a whole." Id. (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S. Ct. 843, 846 (1997). NYCRR § 175.14 states:

> a real estate salesman shall, upon termination of his association with a real estate broker, forthwith turn over to such broker any and all listing information obtained during his association whether such information was originally given to him by the broker or copied from the records of such broker or acquired by the salesman during his association.

Although there is no case law interpreting § 175.14, the statute's plain language brings plaintiff's photographs comfortably within the definition of "listing information." A photograph of a property provides information about that property just as does a textual description of the property. A potential buyer uses a photograph of the property for the same purpose as the other supplied information in the listing – to learn about the property in order to consider whether to inquire further and ultimately to buy it. Plaintiff's photographs were acquired by him, the salesman, during his association with defendant, Coldwell Banker Laffey. Therefore, plaintiff's photographs are included in the definition of "listing information." Under §175.14, plaintiff relinquished ownership of the photographs when he was required to turn them over to defendants upon his termination.

Having found that plaintiff's photographs are listing information, the only question that remains is whether the Copyright Act preempts NYCRR § 175.14.

### III. Transfer of Ownership under the Copyright Act

Plaintiff contends that if §175.14 strips him of his copyright interest, it is preempted by the Copyright Act which vests ownership in the creator of the photographs.[6] Plaintiff is mistaken.

Plaintiff overlooks 17 U.S.C. § 201(d)(1) of the Copyright Act which expressly allows "copyright ownership to be transferred in whole or in part by any means of conveyance or by operation of law." Although case law on transfer of copyright ownership by operation of law is sparse, Brooks v. Bates, 781 F. Supp. 202, 205 (S.D.N.Y. 1991), those cases that do address transfer by operation of law make clear that copyright ownership can be transferred by operation

---

[6] Plaintiff has not expressly raised the issue of preemption. However, at oral argument, he questioned whether state or federal law would govern this dispute. Taking a *pro se* plaintiff's arguments and interpreting them "to raise the strongest arguments that they suggest" McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999), the Court will address preemption.

of state law. See In re Marriage of Worth, 195 Cal. App. 3d 768, 774, 241 Cal. Rprt. 135, 137 (Cal. Ct. App. 1987) ("Consequently, notwithstanding that the copyright 'vests initially' in the authoring spouse . . . the copyright is automatically transferred to both spouses by operation of the California law of community property."). Additionally, courts within the Second Circuit have emphasized that in order for copyright ownership to be transferred by operation of law, the author must give his express or implied consent. Id. (citing 3 Nimmer on Copyright § 10.03[a], p 10-42 (1991)); see also Times, Inc. v. Kastner, 972 F. Supp. 236, 238 (S.D.N.Y. 1997) (explaining that "courts in this Circuit have noted that transfers due to bankruptcy or mortgage foreclosure, where there is evidence of the author's express or implied consent of transfer [ ], are transfers by 'operation of law.'"). An author gives implied consent when he engages in overt, voluntary conduct that results in the potential forfeiture of his copyright. See Brooks, 781 F. Supp at 205; see also Times, 972 F. Supp. at 238.[7]

Here, plaintiff's implied consent is apparent. Nothing compelled plaintiff to voluntarily enter into an independent contractor agreement with defendant, Coldwell Banker Laffey. However, when he made the choice to become an associated real estate salesman with defendant, he entered into a legal relationship governed by state law. Plaintiff may not have known, and indeed probably did not know, that under §175.14, he would be affecting his copyright interests by entering into the agreement if the agreement terminated. But as a real estate salesman, he is chargeable with the provisions of state law that affect his business, and his entry into the agreement therefore constitutes his implied consent to the transfer of his copyright ownership in

---

[7] The implied consent requirement is intended to ensure a knowing transfer of a copyright interest in the absence of a writing, which is generally required under the Copyright Act. 17 U.S.C. § 204(a) ("A transfer of ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.").

the event of termination.[8] Thus, pursuant to 17 U.S.C. § 201(d)(1), plaintiff's copyright interest in the photographs transferred by operation of law, namely NYCRR § 175.14, when he left Coldwell Banker Laffey. Plaintiff was required to "turn over" all listing information. In doing so, he turned over his exclusive copyright interest in the photographs.

There is thus no inconsistency between Copyright Law and state law, and therefore no issue of preemption. Copyright law creates the interest in the holder, but what the holder does with his interest, how to sell, alienate, assign it, or take other voluntary action that would transfer ownership, is defined by state law. By entering into the relationship with Coldwell Banker Laffey, plaintiff made a voluntary choice under state law to relinquish it once that relationship terminated.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk is directed to enter judgment in favor of defendants dismissing the complaint.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/
U.S.J.

Dated: Brooklyn, New York
March 26, 2010

---

[8] The second overt act evincing an implied consent of copyright ownership transfer was plaintiff's physical relinquishment of the photographs to defendants. It is unclear if the transfer of the photographs occurred at the conclusion of plaintiff's employment, as per NYCRR §175.14, or at an earlier time. But what is clear is that plaintiff voluntarily effectuated a physical transfer of the photographs to defendants and thus at least implicitly consented to transfer of copyright ownership.